UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-22398-Civ-UU

GRACIELA PALACIOS,

Plaintiff,
v.

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,

Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Boehringer Ingelheim Pharmaceuticals, Inc.'s Motion for Summary Judgment (D.E.103) and Plaintiff Garciela Palacios's Motion for Partial Summary Judgment. (D.E. 109.) The Motions are ripe for disposition.

THE COURT has considered the Motions and pertinent portions of the record and is otherwise fully advised in the premises.

### I. FACTUAL BACKGROUND

Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") develops, manufactures and sells branded pharmaceutical products. (Castresana Affidavit, D.E. 104-1, Ex. A, ¶ 2.) All of the prescription medical products that Boehringer sells are available to consumers only via prescriptions written by a licensed healthcare provider. (Castresana Aff. ¶ 4.) Boehringer employs approximately 4,500 employees, approximately 2,300 of which are Pharmaceutical Sales Representatives ("PSRs") (Castresana Aff. ¶ 5.) Plaintiff was employed by Boehringer as a

1

PSR from July 7, 2003 to October 31, 2009. (Castresana Aff. ¶ 10.)[1]

Plaintiff's position required her to work in a "Geo Team" with two other PSRs, each of whom was expected to visit physicians in South Florida. (Palacios Dep. at 73:11-16.) When she called on physicians, Plaintiff provided them with information about the benefits of particular Boehringer pharmaceuticals and encouraged them to prescribe those products. (Palacios Dep. at 104: 14–17.) However, Plaintiff did not sell any pharmaceuticals directly to physicians or patients. (Staak Deposition, D.E. 116-1, at 67:6–19, 76:20–22.) Rather, individuals in Boehringer's Trade Relations and Managed Markets groups sold its pharmaceutical products to wholesale and retail customers. (Staak Dep. at 53–54; Conklin Deposition, D.E. 116-4, at 24:7–22, 26: 6–15.) No PSRs were employed in the Trade Relations or Managed Markets groups, and Plaintiff never worked in either of these groups. (Staak Dep. at 60:5–11; Conklin Dep. at 25:20–27:15; Palacios Declaration, D.E. 116-2, ¶ 15.)

Boehringer also maintained in its corporate headquarters separate departments for the functional areas of advertising, information technology, legal and regulatory compliance, sales operations, commercial operations, commercial analytics, managed markets, accounting/finance, safety and health, insurance, taxes, research and development, employee benefits, public relations, government relations, and human resources. (Staak Dep. at 13–17; Palacios Dep. at 13–17.) Plaintiff never worked in any of those departments. (Staak Dep. at 15–23, 50–51.)

Boehringer provided Plaintiff with a Physician Target Report, which was a list of 250

---

[1] Boehringer seeks candidates with previous sales experience to fill PSR positions. (Staak Affidavit, D.E. 104-1, Ex. B, ¶ 4.) When applying for her PSR position with Boehringer, Plaintiff detailed her duties and successes as a salesperson in her previous employment. (Palacios Deposition, D.E 104-1, at 10:19–11:1, 13: 24–14, 21:2–23:21.)

physicians in her territory that Boehringer identified as targets for visits by Plaintiff within a six-month period. (Palacios Dep. at 80:24–81:3.) Plaintiff was not allowed to forego calling on a particular target assigned by Boehringer, nor was she permitted to deviate, either upwards or downwards, from the number of visits specified in the target list. (Palacios Decl. ¶¶ 22–23, 32.) PSRs such as Plaintiff were subject to discipline and/or reprimanded if they failed to adhere to their assigned target lists. (Palacios Decl. ¶ 37.)

Plaintiff visited between eight and ten physicians a day. (Palacios Dep. at 104:14–17.) Each week, Plaintiff planned out which physicians she would visit and when. (Palacios Dep. at 112: 24–113:3.) In preparation for a meeting with a physician, Boehringer provided Plaintiff with a book that listed the drugs to be promoted and set forth "what the message was going to be for that drug...all PSRs were to consistently use those words verbatim to the physician." (Palacios Decl. ¶ 38.) Plaintiff was not permitted to alter this core message, and she was not permitted to speak to physicians about the off-label use of drugs, or compare Boehringer's products with those of Boehringer's competitors unless specifically instructed to do so by Boehringer's headquarters. (Palacios Decl. ¶ 41.)

Boehringer provided Plaintiff with promotional materials to use during her meetings with physicians and trained her on how to use the materials. (Palacios Dep. at 121: 12–13, 161: 1–6.) Plaintiff determined which promotional materials to use and how best to incorporate them into her presentation with each physician. (Staak Aff. ¶ 10.) Plaintiff used information she learned about a specific physician's objection to certain medicines to effectively present information to that physician. (Palacios Dep. at 120: 17– 121: 7.) Boehringer also provided Plaintiff with samples of the products for which she was responsible, and she, in turn, gave the samples to the

physicians she visited. (Staak Aff. ¶ 11.)

In a majority of her visits with physicians, Plaintiff asked if they would prescribe her products to patients where treatment with one of them was appropriate. (Palacios Dep. at 156: 25–157:9.) While the physicians might tell her if they were going to write a prescription for her products, the physicians' commitments were non-binding, and neither Plaintiff nor Boehringer had a way of knowing whether a specific physician actually prescribed her products. (Palacios Dep. at 154: 22–23.)

Plaintiff and her Geo Team received a budget of approximately $25,000–$30,000 per year to divide among themselves for providing food to physicians' offices and hosting physicians outside their offices. (Palacios Dep. at 131:5–7.) Plaintiff had access to $8,333–$10,000 of that budget. (Palacios Dep. at 131:8–9.) Plaintiff had no input in determining the budget, nor could she deviate from the budget that Boehringer assigned to her. (Palacios Decl. ¶ 57.) However, Boehringer expected Plaintiff to allocate her budget based on her analysis of her territory. (Staak Aff. ¶ 13.) Plaintiff used her budget to purchase food and organize "lunch-and-learn" sessions with physicians in order to spend more time with them promoting Boehringer's products. (Palacios Dep. at 125: 11–19; 170: 11–17.)

During her early years of employment (pre-2007), Plaintiff was also involved in organizing Speaker Programs with her Geo Team. (Palacios Dep. at 144: 6–9; Palacios Decl. ¶ 48.) Plaintiff selected speakers from Boehringer's pre-approved list of physicians, and Boehringer negotiated a price for the speakers. (Staak Dep. at 27: 9–28:1.) Plaintiff used Speaker Programs to build relationships with physicians and to gain access to physicians who might otherwise not see her when she visited their offices. (Palacios Dep. at 144: 11–22.)

Plaintiff performed her job free of daily in-person supervision, with the exception of "ride alongs" every six weeks, during which her district manager would accompany her on her physician visits. (Palacios Dep. at 109: 8–12.) The district manager conducted the "ride alongs" to ensure that Plaintiff was not deviating from Boehringer's core message when she met with physicians. (Palacios Dep. at 109: 8–12.) Plaintiff was responsible for tracking her daily activities using a computer system called VISTA. (Staak Dep. at 89:1–16; Conklin Dep. at 217: 12–23; Palacios Decl. ¶ 66.) Plaintiff's managers had access to the information she entered and could oversee her daily activities. (Staak Dep. at 89:1–16; Conklin Dep. at 217: 12–23; Palacios Decl. ¶ 66.) Plaintiff communicated with her district manager on average every other day or once per week by telephone. (Palacios Dep. at 110: 18-20; Palacios Decl. ¶ 69.)

Plaintiff's annual base compensation was $45,000 at the beginning of her employment with Boehringer and $55,000 during her last year of employment. (Palacios Dep. at 68:25–69:7.) Plaintiff also earned between $25,000 and $40,000 per year in commission compensation. (Palacios Dep. at 70: 13–23.) At all relevant times, Boehringer classified Plaintiff as exempt from the overtime requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and thus, Plaintiff did not receive separate compensation in excess of her regular pay for any time that she worked beyond forty hours per week. (Amended Complaint, D.E. 43, ¶ 17; Answer, D.E. 46, ¶ 17.)

Plaintiff has filed this action, alleging that Boehringer failed to pay her overtime wages in violation of the FLSA. The parties have moved for summary judgment on Plaintiff's claim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is authorized under Federal Rule of Civil Procedure ("Rule") 56 only

when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Addaxes v. SO. Press & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[2] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026,

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

1031 (5th Cir. 1982); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Addaxes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

### III. DISCUSSION

The parties do not dispute that Boehringer failed to pay Plaintiff overtime. However, they dispute, as a matter of law, whether the activities in which Plaintiff engaged rendered her exempt from the FLSA's overtime requirement. Boehringer has moved for summary judgment, arguing that Plaintiff is exempt from receiving overtime under the FLSA's outside sales exemption and administrative exemption. Plaintiff has moved for partial summary judgment, contending that neither of the exemptions apply to PSRs such as her. Plaintiff has also moved for summary judgment on the issue of liquidated damages and statute of limitations.

The FLSA provides that "no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times

the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA includes several exemptions from its minimum wage and overtime requirements. *Gregory v. First Title of Am.*, 555 F.3d 1300, 1302 (11th Cir. 2009). Whether an employee's job qualifies as exempt from federal wage laws is a question of law to be resolved by the courts. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). Exemptions to the FLSA's overtime requirement are to be "narrowly construed against the employer seeking to assert them and their application is limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The employer bears the burden of proof to demonstrate that the employee qualifies for exemption from the FLSA's overtime requirement by a preponderance of the evidence. *Idaho Sheet Metal Workers, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966).

### A. The Outside Sales Exemption

The FLSA exempts from its minimum wage and overtime requirements individuals employed in the capacity of an outside salesperson. 29 U.S.C. § 213(a)(1). The Department of Labor's implementing regulation defines an outside salesperson as any employee:

> (1) Whose primary duty is: (I) making sales within the meaning of section 3(k) of the Act or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). Section 3(k) of the FLSA provides that the terms "sale" or "sell" includes "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The parties do not dispute that Plaintiff customarily and regularly worked away from Boehringer's primary place of business while performing her duties.

The sole issue here is whether Plaintiff's work as a PSR constituted "sales." The parties and this Court acknowledge that the Eleventh Circuit has not addressed the issue of whether PSRs are exempt as outside sales people. Plaintiff urges the Court to follow the Second Circuit in *In re Novartis Wage and Hour Litig.*, 611 F.3d 141 (2d Cir. 2010) and hold that the outside sales exemption does not apply to PSRs because PSRs do not "make sales." Boehringer asks the Court to follow the Ninth Circuit's opinion in *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383 (9th Cir. 2011) and hold that PSRs have the primary duty of making sales.

In *In re Novartis*, the Second Circuit held that PSRs did not meet the requirements of the outside sales exemption. The Second Circuit reasoned that

> where the employee promotes a pharmaceutical product to a physician but can transfer to the physician nothing more than free samples and cannot lawfully transfer ownership of any quantity of drug in exchange for anything of value, cannot lawfully take an order for its purchase, and cannot lawfully even obtain from the physician a binding commitment to prescribe it...it is not plainly erroneous to conclude that the employee has not in any sense within the meaning of the statute or regulations, made a sale.

611 F.3d at 154. In *SmithKline Beecham*, the Ninth Circuit concluded that in the highly regulated context of prescription medications, "a 'sale' is an exchange of non-binding commitments between the PSR and physician at the end of a successful call," and thus, PSRs who obtain such commitments make a sale as defined by the FLSA and its implementing regulations. 635 F.3d 383, 396 (9th Cir. 2011).

The FLSA's implementing regulations provide that "[s]ales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property" and that the term "'services' extends the outside

sales exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order." 29 C.F.R. § 541.501(b) and (d). The regulations also clarify the differences between exempt and non-exempt "promotional work":

> Promotional work is one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending on the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an employee's *own outside sales* or solicitations is exempt work. On the other hand, promotional work that is incidental to sales *made, or to be made, by someone else* is not exempt outside sales work.

29 C.F.R. 541.503(a) (emphasis added).

Here, there is no dispute that Plaintiff was not permitted to give healthcare providers drugs in exchange for anything of value. It is also undisputed that the employees in Boehringer's Trade Relations and Managed Markets sell drugs to retailers, and the retailers sell the drugs to patients with prescriptions for them. Moreover, there is no dispute that Plaintiff was not an employee in the Trade Relations and Managed Markets groups. Thus, none of the work that Plaintiff performed involved the "transfer of title to tangible property." At best, Plaintiff's presentation of Boehringer's core message to physicians was non-exempt promotional work that was incident to the sales made by individuals in the Trade Relations and Managed Market groups. Accordingly, the Court agrees with the Second Circuit's rationale. Plaintiff's inability to transfer ownership of any one of the drugs she was responsible for in exchange for money, her inability to take a purchase order for any of the drugs, and her inability to obtain a binding commitment from physicians to prescribe a drug, renders her unable to make a "sale" as defined

10

under the FLSA and its implementing regulations. *See In re Novartis*, 611 F.3d at 154.[3]

## B. The Administrative Exemption

The administrative exemption relieves employers from paying overtime wages to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The exemption applies to employees earning over $455 per week "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The parties do not dispute that Plaintiff earned over $455 per week and performed non-manual work. The issue here is whether the work Plaintiff performed was (I) directly related to the management or general business operations of Boehringer and (ii) included the exercise of discretion and independent judgment with respect to matters of significance. Here again, the parties and the Court acknowledge that the Eleventh Circuit has never addressed whether PSRs

---

[3] The Court declines to follow the Ninth Circuit's liberal reading of the phrase "sale" and its tenuous application of the outside sales exemption to PSRs. The crux of the Ninth Circuit's reasoning in *SmithKline Beecham* is as follows: Because the products for which PSRs are responsible may be legally dispensed only with a prescription written by a licensed healthcare provider, the relevant purchaser is the healthcare provider, and thus PSRs make a "sale" when they obtain non-binding commitments from providers that they will write a prescription. 635 F.3d at 396. The undersigned disagrees with the contention that the relevant purchaser is the healthcare provider. First, the healthcare provider is not bound to write a prescription just because she tells a PSR that she will. Second, even if the provider writes a prescription, she does not actually purchase anything. The prescription merely allows a patient to purchase a given drug; it does not guarantee that there will be a "transfer of title to tangible property" because the prescription does not obligate the patient to purchase the drug. Accordingly, PSRs like Plaintiff cannot make a "sale" to physicians, because physicians cannot purchase the drugs.

are exempt under the administrative sales exemption.

Plaintiff first argues that she merely carried out Boehringer's day-to-day business affairs, thus she did not perform work that was directly related to the management or general business operations of Boehringer. Boehringer contends that Plaintiff's role was related to Boehringer's general business operations.

According to the FLSA's implementing regulations, an employee's duties are "directly related" to general business operations if she performs functions that are involved with "assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R §541.201(a). An administrative employee may be exempt from overtime pay because she "engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs." *Talbott v. Lakeview Ctr., Inc.*, 2008 WL 4525012, at * 4 (N.D. Fla. Sept. 30, 2008) (internal quotations omitted). The regulations provide examples of work that would ordinarily satisfy the "directly related to" requirement, including "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

Here, Plaintiff was not involved in "running or servicing" Boehringer's business. Instead, Plaintiff worked out of her vehicle or in physicians' offices communicating to

physicians Boehringer's carefully scripted core message. Boehringer has separate departments in its corporate headquarters that are responsible for preforming administrative duties and running and servicing its business. For example, Boehringer has separate Trade Relations and Managed Markets groups, and separate advertising, sales operation, and commercial analytics departments. Plaintiff never worked in any of these groups or departments. Plaintiff's role was to merely perform promotional work that aided these departments in their duties. Plaintiff also was not involved in Boehringer's "management policies or general operations." She never performed any work in the functional areas of tax, finance, accounting, auditing, advertising, research and development, personnel management, human resources, labor relations, government relations, or information technology. Accordingly, Plaintiff's role was not related to the management or general business operations of Boehringer.

      Plaintiff next argues that even if her work was directly related to the management or general business operations of Boehringer, the administrative exemption does not apply because she did not exercise discretion and independent judgment with respect to matters of significance. According to Plaintiff, she merely applied well-established techniques and procedures proscribed by Boehringer while performing her role, which required no discretion or independent judgment with respect to matters of significance. Boehringer argues that Plaintiff exercised discretion and independent judgment because she had leeway to determine how best to engage physicians, develop a rapport with them, and address their questions and concerns about a particular product. Boehringer also argues that Plaintiff exercised discretion because she was free to decide what order to visit physicians' offices, how best to gain access to the offices, and how to allocate Boehringer's budget for promotional events.

The FLSA's implementing regulations explain that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). The mere "use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources" does not constitute an employee's exercise of discretion or independent judgment. § 541.202(e). Instead, an employee who exercises discretion or independent judgment generally "has authority to make an independent choice, free from immediate direction or supervision." § 541.202 ( c). The regulations provides a lengthy set of "[f]actors to consider" in making such a determination:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long-or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

In comparing Plaintiff's primary duties against the factors set forth in § 541.202(b), the Court finds no evidence in the record that Plaintiff had any authority to formulate, affect, interpret, or implement Boehringer's management or operating policies, or that she was involved

in planning Boehringer's long-term or short-term business objectives, or that she carried out major assignments in conducting the operation of Boehringer's business, or that she had any authority to commit Boehringer in matters that have significant financial impact. *See In re Novartis*, 611 F.3d at 157. For example, although Plaintiff could decide how to use funds reserved for promotional events, her managers gave her a strict budget for each event, which she was not permitted to exceed. The record does not indicate that Plaintiff was allowed to negotiate and bind Boehringer to any significant matters, or waive or deviate from Boehringer's established policies and procedures without its prior approval. Moreover, Plaintiff's ability to determine how best to engage physicians, develop a rapport with them, and address their questions and concerns about a particular product are all skills that Plaintiff developed and honed through Boehringer's training sessions. And, although Plaintiff determined how best to approach physicians, Boehringer never allowed her to stray outside the core message. Finally, even though Plaintiff had discretion in determining the order in which she would visit physicians, Boehringer determined which physicians she would visit, required her to visit every physician on its list, and mandated how many times she had to visit each physician in a six-month period. If Plaintiff did not visit every physician on the list the specified number of times, she was subject to discipline. In light of all the controls that Boehringer placed upon Plaintiff, the Court finds that Plaintiff did not exercise discretion or independent judgment relating to matters of significance.

In sum, Boehringer fails to demonstrate that Plaintiff's role was directly related to the management or general business operations of Boehringer and that she exercised discretion and independent judgment with respect to matters of significance. Accordingly, Plaintiff is not

15

exempt from receiving overtime under the FLSA's administrative exemption.[4]

### C. Liquidated Damages and Statute of Limitations

Employees are entitled to liquidated damages under the FLSA unless an employer can affirmatively show that its "act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987). Congress enacted a two-tiered statute of limitations under the FLSA; plaintiffs generally must commence actions to enforce the FLSA within a two-year limitations period. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). However, if a plaintiff succeeds in establishing that an employer's violation of the FLSA was wilful, the limitations period extends to three years. *Id.*

Plaintiff argues that Boehringer's classification of her as exempt was not in good faith and that its violation of the FLSA was willful, thus she is entitled to liquidated damages and her claims are subject to a three-year statute of limitations. Boehringer argues otherwise. There is not enough evidence in the record for the Court to conclude whether Boehringer acted in good faith and whether Boehringer's conduct was willful. Accordingly, the liquidated damages and

---

[4] Boehringer relies heavily on *Smith v. Johnson and Johnson*, 593 F.3d 280 (3d Cir. 2010) to support its argument that the administrative exemption applies to PSRs such as Plaintiff, however, the facts of *Smith* are distinguishable from the facts in this action. The factual record in *Smith* indicated that the plaintiff's position required her to possess managerial qualities and that she could "run her own territory as she saw fit," and thus, the Third Circuit concluded that the administrative exemption applied to the plaintiff. *Id.* at 285–286. Here, there are no facts in the record that allow the undersigned to conclude that Plaintiff's position required her to possess managerial qualities or that she was able to run her territory as she saw fit. In fact, the record indicates that Plaintiff had managers who supervised her work and that people other than her managed her territory. Accordingly, *Smith* does not apply to this action.

statute of limitations questions will be posed to the jury.

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Boehringer's Motion for Summary Judgment (D.E. 103) is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment (D.E. 109) is GRANTED IN PART. The Court grants summary judgment in favor of Plaintiff on the outside sales exemption and the administrative exemption, but reserves judgment on the issues of liquidated damages and statute of limitations.

DONE AND ORDERED in Chambers, Miami, Florida, this 11th day of July, 2011.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:

counsel of record